**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

SHAWN W. BLACKBURN,

     **Petitioner,**         **CASE No. 2:21-cv-4264**

**v.**                **JUDGE EDMUND A. SARGUS, JR.**
                   **Magistrate Judge Elizabeth P. Deavers**

WARDEN, SOUTHEASTERN
CORRECTIONAL INSTITUTION,

     **Respondent.**

**REPORT AND RECOMMENDATION**

   Petitioner, a state prisoner proceeding *pro se*, has filed a petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. This case has been referred to the Undersigned pursuant to

28 U.S.C. § 636(b) and Columbus' General Order 14-1 regarding assignments and references to

United States Magistrate Judges.

   This matter is before the Court to consider the Petition (ECF No. 1), Respondent's Return

of Writ (ECF No. 8), Petitioner's Traverse (ECF No. 19), and the state court record. (ECF No.

7.) For the reasons that follow, it is **RECOMMENDED** that this action be **DISMISSED**.

**I. BACKGROUND**

   **A. Factual history**

   The Ohio Court of Appeals for the Fourth Appellate District, Jackson County, set forth

the facts of this case on direct appeal:

> On April 3, 2016, S.W., the victim's mother, called 911 to report that a
> "child molester" was in her home. The mother explained to the 911 operator that
> the mother observed appellant, the so-called "child molester," completely naked
> and exiting her thirty-three-year-old severely autistic daughter's bedroom. The

1

mother reported that, after appellant exited her daughter's bedroom, the mother found her daughter naked in bed with a vibrator beside her.

A Jackson County Grand Jury later returned an indictment that charged appellant with seven offenses: (1) rape, in violation of R.C. 2907.02(A)(1)(c); (2) two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(5); (3) kidnapping, in violation of R.C. 2905.01(A)(2); (4) kidnapping, in violation of R.C. 2905.01(A)(5); (5) obstructing justice, in violation of R.C. 2921.23(A)(4); and (6) obstructing official business, in violation of R.C. 2921.31(A). Appellant entered not guilty pleas.

At trial, the 911 dispatcher stated that she received the call from the mother and that the mother reported that she was having a problem with "[a] child molester." The mother explained to the dispatcher that the mother caught appellant exiting her thirty-three-year-old autistic daughter's bedroom. The mother additionally indicated that appellant used a vibrator on the daughter.

Jackson County EMS paramedic Debra Burns testified that she responded to the 911 call. Upon arrival, mother informed Burns that when the mother went to check on her daughter, appellant "was coming out of the room completely naked and when she went into the bedroom, the girl was naked in the bed and she found an object that was a vibrator." Burns indicated that the mother specifically stated that appellant "was completely naked."

Paramedic Ryan Foster likewise testified that the mother reported that appellant was naked as he left the bedroom.

Linda McNeal stated that the mother and the victim presented to the emergency room for a sexual assault examination. McNeal explained that the victim was "severely autistic and mute" and McNeal obtained information that surrounded the alleged assault from the victim's mother. McNeal testified that the victim's mother reported that the mother observed appellant exit the victim's bedroom and that appellant was naked. The mother checked on the victim and found her undressed from the waist down and with a vibrator on the bed. McNeal recited the mother's words: "I went into my daughter's bedroom to check on her. [Appellant] came out of her room with no clothes on, got dressed and left. My daughter was in the bed with no pants on and a dildo laying in the bed." McNeal additionally observed that the mother appeared "upset and tearful, anxious."

The mother testified that she called 911 because she thought that appellant "might have messed with her" daughter. The mother explained that one morning, she discovered appellant "by her [daughter's] bedroom door" and "he was naked." The mother asked appellant "what he was doing," but she does not recall his response. The mother "think[s] he said he used the bathroom or something." The mother then called 911.

The prosecutor asked the mother whether she recalled "initially reporting that [she] caught a male relative coming out of [her] daughter's bedroom." The mother stated: "I caught him coming out, but I didn't report it. Well I think he come [sic] out, I wasn't sure on that [sic]." The mother continued to equivocate and indicated that she was uncertain whether she saw appellant standing by her daughter's bedroom door or whether she saw him exiting her daughter's bedroom. The mother agreed, however, that her memory would have been better at the time of the incident than it was at the time of her testimony.

The prosecutor then asked the mother whether she recalled telling the 911 operator that the mother "caught [appellant] coming out of her [daughter's] bedroom." The mother responded, "No, I was too upset. I don't remember half of [it]." The mother additionally explained that she did not recall what she told the emergency medical responders or the medical personnel at the hospital.

The prosecutor next questioned the mother whether she recalled "telling people [on the date of the incident] that [appellant] said that he had been in her [daughter's] room checking on her." The mother stated that appellant "might have said that." The mother explained that after she asked appellant about his actions, the mother checked on her daughter. The mother stated that her daughter "was on her bed and she had a dildo." The prosecutor asked the mother whether the mother noticed anything else about her daughter, and the mother stated, "I'm really not sure." The prosecutor asked the mother what her daughter had been wearing, and the mother stated that she did not believe that her daughter "had anything on." The mother "think[s]" her daughter was completely naked but she cannot recall. The mother also could not recall "telling numerous people that day that she was, in fact, naked from the waist down." The mother explained that her daughter usually sleeps in pajamas and that she believes that her daughter's pajamas "were on the floor."

The prosecutor next questioned the mother about the location of the vibrator. The mother stated that she believes her daughter "was just laying there playing with it." The mother stated that she does not recall previously reporting that the vibrator "was laying in the bed beside her." The mother stated that "[i]t might have been laying there, but [she's] pretty sure she was playing with it." The mother testified that she does not recall telling a sheriff's deputy that her daughter had not been "using it or handling it in any way."

The prosecutor then played the 911 audio recording. During the call, the mother reported that she "caught [appellant] coming out of [her] daughter's room." The prosecutor asked the mother whether appellant's voice could be heard in the background stating, "you better not be doing that shit." The mother stated that she "didn't make that part out."

The prosecutor next played part of a second telephone conversation between the mother and the dispatcher. During this conversation, the mother stated: "He had a ... I call it a dildo. Whatever you want to call it and he come [sic] out of her room

(inaudible) and she was naked and that's what makes me, you know..." The mother testified that even if she had told the dispatcher that appellant had the dildo (which she stated she did not clearly hear during the audio replay), appellant "didn't have the dildo." Instead, her daughter had it "either in her hands or on the bed."

The prosecutor also asked the mother whether "naked" meant that appellant did not "have any clothes on." The mother stated: "I can't swear to that because I really ... it's been too long."

The prosecutor next questioned the mother how her daughter could have obtained the vibrator. The mother explained that "it was supposed to have been throwed [sic] away," but she believes it had been "on the dresser or in the basket beside the dresser."

During the mother's testimony, the judge interrupted the prosecutor's questioning and called the parties for a sidebar. The judge stated:

> This witness is highly evasive and can't seem to remember the most basic of facts. I've heard I don't know if that's even my own voice, oh, please. If this isn't a hostile witness, I don't know what is. She's trying to shuck and duck on every question. If you want her declared hostile, I'm going to at this point.

The court stated that it would allow leading questions because the witness had been responding to open ended questions in a "completely non-responsive" manner. Appellant's counsel objected.

At that point, the prosecutor played the recording of the mother's April 3, 2016 interview with law enforcement officers. During the interview, the mother stated that appellant exited her daughter's bedroom "totally naked." The mother explained that she asked appellant "what the hell he was doing," and appellant stated, "Oh, I wasn't doing nothing[;] I was checking on her." The mother advised the officers that she wondered why appellant would be "checking on her [daughter] with no clothes on" and why her daughter was not wearing her pajamas.

The officers also asked the mother where the vibrator came from, and the mother stated that it would have been in her drawer. The mother informed the officers that appellant claimed that her daughter retrieved the vibrator, but the mother "know[s] better [than that]." The mother informed the officers that appellant told her "he wasn't going to jail."

When the prosecutor asked the mother whether listening to the recording refreshed the mother's recollection about the incident, the mother stated, "Not really, but * * * * [i]t was fresh in my mind then." The mother stated that she had some difficulty remembering because she has a "brain thing."

The prosecutor next played a recording of the mother's June 9, 2016 interview with law enforcement officers. During this second interview, the mother stated that she called 911 on April 3, 2016 because she noticed appellant "walking around in boxers." The mother informed the officers that "walking around in boxers" means the same to her as "naked." The officers asked the mother where appellant was located when she saw him, and the mother responded, "I don't know... I'm half blind so I can't tell you exactly. I thought he was by her door. He said he was coming out of the bathroom." The mother explained that she then checked on her daughter and found her daughter with a vibrator.

The prosecutor asked the mother whether the mother believed that the information the mother provided during her second interview significantly differed from her first interview. The mother stated, "Some I guess."

The state additionally introduced DNA evidence from the rape kit showing that testing detected both appellant's and the victim's DNA. The mother claimed that appellant's DNA must have been mixed with the victim's while doing laundry and did not believe that appellant's DNA resulted from a sexual encounter.

The state additionally presented evidence that, after investigators sought to have the victim's mental capacity evaluated, appellant, mother and the victim went to Kentucky. The state's witnesses suggested that appellant took the victim out of the state in order to prevent her from being evaluated, but mother claimed they simply went on a vacation and mother intended to take the victim to be evaluated the afternoon of their return home.

*State v. Blackburn*, No. 18CA3, 2020 WL 1479608, *1-4 (Oh. App. 4th Dist. Mar. 11, 2020).

Following a jury trial, Petitioner was convicted of one count of rape, in violation of R.C. 2907.02(A)(1)(c) with a sexually violent predator specification (Count One); two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(5) (Counts Two and Three); one count of kidnapping, in violation of R.C. 2905.01(A)(5) (Count Five); one count of obstructing justice, in violation of R.C. 2921.32(A)(4) (Count Six); and one count of obstructing official business, in violation of R.C. 2921.31(A) (Count Seven). The jury found Petitioner not guilty of kidnapping, in violation of R.C. 2905.01(A)(2) (Count Four).

On June 21, 2018, the trial court held a sentencing hearing. The court determined the rape charge in count one should merge with the gross sexual imposition offense charged in count

5

two.  The court also merged the obstructing justice and obstructing official business offenses (counts six and seven) and determined that the kidnapping offense (count five) did not merge with either the obstructing justice offense or the obstructing official business offense.  The trial court sentenced Petitioner to serve the following prison terms, to be served consecutively to one another: (1) a mandatory eleven years to life in prison for rape (count one); (2) eighteen months for gross sexual imposition (count three); (3) eleven years for kidnapping (count five); and (4) twelve months for obstructing justice.

### B. Direct Appeal

Petitioner, represented by counsel, filed a timely notice of appeal to the Fourth District Court of Appeals, raising five assignments of error:

> First Assignment of Error:  Shawn Blackburn received ineffective assistance of counsel when both his trial attorneys failed to object to the introduction of Sharleen Whaley's April 3, 2016 and June 9, 2016 interviews with law enforcement. Sixth and Fourteenth Amendments, United States Constitution; Article I, Sections 10 and 16, Ohio Constitution; Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.E.2d 674 (1984) T.p. 265-290.

> Second Assignment of Error:  Shawn Blackburn received ineffective assistance of counsel when both his trial attorneys failed to object to the introduction of evidence that was substantially more prejudicial than it was probative. Sixth and Fourteenth Amendments, United States Constitution; Article I, Sections 10 and 16, Ohio Constitution; Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.E.2d 674 (1984); Evid.R. 403; T.p 159, 278, 380, 582, 589, 738-753; State's Exhibits EE1-EE4.

> Third Assignment of Error:  Shawn Blackburn received ineffective assistance of counsel when both his trial attorneys failed to object to the jury instructions given for Count 6, obstructing justice. Sixth and Fourteenth Amendments, United States Constitution; Article I, Sections 10 and 16, Ohio Constitution; Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.E.2d 674 (1984); R.C. 2921.32(A); T.p. 823.

> Fourth Assignment of Error:  Shawn Blackburn's conviction for obstructing justice was supported by insufficient evidence in violation of his right to due process of law. Fifth, Sixth, and Fourteenth Amendments, United States Constitution; Article I, Section 10, Ohio Constitution; *Jackson v. Virginia*, 443 U.S. 307, 616, 99 S.Ct.

2781, 61 L.Ed.2d 560 (1979); T.p. 246-250, 385-386, 610, 717, 909, June 25, 2018 Judgment Entry of Sentence. Case: 2:21-cv-04264-EAS-EPD Doc #: 8 Filed: 12/13/21 Page: 7 of 58 PAGEID #: 397 8

Fifth Assignment of Error: The trial court erred in sentencing Shawn Blackburn, when it determined that Count 5 (kidnapping) and Counts 6 and 7 (obstructing justice and obstructing official business) were not allied offenses. R.C. 2941.25; *State v. Ruff*, 132 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 82; Sentencing Hrg T.p. 5, 10; June 25, 2018 Judgment Entry of Sentence.

(ECF No. 7, at PAGEID # 75-76.) On March 11, 2020, the Fourth District Court of Appeals overruled Petitioner's first, second, and fifth assignments of error. Due to an error in the jury instructions, the Court of Appeals sustained Petitioner's third assignment of error, vacating his conviction for obstructing justice and remanding for resentencing on the merged count of obstructing official business. Because the court granted relief on Petitioner's third assignment of error, it found Petitioner's fourth assignment of error to be moot. *Blackburn*, 2020 WL 1479608, at *9-10.

## C. Ohio Supreme Court

Petitioner failed to file a timely appeal to the Ohio Supreme Court, but on June 22, 2020, Petitioner filed a *pro se* notice of appeal and motion for leave to file a delayed appeal. (ECF No. 7, at PAGEID # 197.) On July 28, 2020, the Ohio Supreme Court granted Petitioner's motion for a delayed appeal due to the COVID-19 pandemic. (*Id*. at PAGEID # 240.) Petitioner set forth the following proposition of law:

A criminal defendant's state and federally protected Constitutional right to effective assistance of counsel is violated where counsel renders a deficient performance that leads to a reasonable probability but for the deficient performance, the outcome of the appeal would have differed.

(*Id*. at PAGEID # 242.) On November 10, 2020, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *(Id*. at PAGEID # 250.)

7

### D. Resentencing

On remand for resentencing, the trial court again merged counts one and two.  The court sentenced Petitioner to a mandatory sentence of eleven years to life in prison for the rape conviction in count one, eighteen months in prison for the GSI conviction in count three, eleven years in prison for the kidnapping conviction in count five, and twelve months in prison for the obstructing official business conviction in count seven.  All sentences were ordered to run consecutively to each other.  (ECF No. 7, at PAGEID # 251-53.)

On October 30, 2020, Petitioner, through new counsel, filed a timely notice of appeal to the Fourth District Court of Appeals, raising the following assignment of error:

> The trial court erred to the prejudice of Mr. Blackburn by failing to merge allied offenses of similar import at the time of sentencing.

(*Id*. at PAGEID # 260, 263.)  Specifically, Petitioner argued that on remand, the trial court failed to merge the counts of kidnapping and obstructing official business.  On November 12, 2021, the Fourth District Court of Appeals affirmed the judgment of the trial court.  *State v. Blackburn*, No. 20CA8, 2021 WL 5296899 (Oh. App. 4th Dist. Nov. 12, 2021).  Petitioner sought review of the appellate court's decision, and on March 1, 2022, the Ohio Supreme Court declined to accept jurisdiction of the appeal.

### E. Post-Conviction

On September 30, 2019, Petitioner, proceeding *pro se*, filed a post-conviction petition seeking to vacate or set aside his conviction.  (ECF No. 7, at PAGEID # 252.)  On December 30, 2019, the trial court denied the petition as untimely.  (*Id*. at PAGEID # 310-11.)  Petitioner failed to file an appeal of the trial court's decision.

### F. Rule 26(B) Application to Reopen Appeal

On April 30, 2020, Petitioner filed a *pro se* application to reopen his direct appeal,

arguing that he was denied the effective assistance of appellate counsel.  (ECF No. 7, at PAGEID

# 312.)  On July 23, 2020, the Fourth District Court of Appeals denied Petitioner's application to

reopen as without merit.  (*Id*. at PAGEID # 322-39.)  It does not appear that Petitioner sought

review of this adverse decision before the Ohio Supreme Court.

## II.  HABEAS PROCEEDINGS

In August 2021, Petitioner, proceeding *pro se*, filed a petition for a writ of habeas corpus,

setting forth twelve grounds for relief.  (ECF No. 1.)  Specifically, Petitioner asserts:

> **GROUND ONE**: PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF
> COUNSEL WHEN BOTH OF HIS TRIAL ATTORNEYS FAILED TO OBJECT
> TO THE INTRODUCTION OF [Sharleen Whaley]'s APRIL 3, 2016 AND JUNE
> 9, 2016 INTERVIEWS WITH LAW ENFORCEMENT SIXTH AND
> FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION;
> ARTICLE I, SECTION 10 AND 16, OHIO CONSTITUTION.
>
> Supporting Facts: Trial counsel was constitutionally ineffective in failing to object
> to the introduction of inadmissible statements that did not satisfy foundational
> requirements prior to the introduction of Sharleen's statements, the recorded
> statements were inadmissible.
>
> **GROUND TWO**: PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF
> COUNSEL WHEN BOTH OF HIS TRIAL ATTORNEYS FAILED TO OBJECT
> TO THE INTRODUCTION OF EVIDENCE THAT WAS SUBSTANTIALLY
> MORE PREJUDICIAL THAN IT WAS PROBATIVE. SIXTH AND
> FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION;
> ARTICLE I, SECTION 10 AND 16, OHIO CONSTITUTION.
>
> Supporting Facts: Trial counsel was constitutionally ineffective in failing to object
> to the introduction of evidence that was substantially more prejudicial than it is
> probative. Trial Counsel failed to object to the following evidence; (1) mother
> [Sharleen Whaley] was limited to supervised visits with the alleged victim after she
> was placed in foster-care, (2) law enforcement speculated during an interview with
> Sharleen that Appellant would plead guilty and "be punished for what he done";
> (3) law enforcement pushed the prosecutor to indict appellant; and (4) probate court
> orders that the victim was in danger while in appellant's presence. This evidence

that "invited the jury to adopt factual conclusions about the evidence unfairly prejudiced his defense.

**GROUND THREE**: PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN BOTH OF HIS TRIAL ATTORNEYS FAILED TO OBJECT TO THE JURY INSTRUCTIONS GIVEN FOR COUNT 6, OBSTRUCTING JUSTICE. SIXTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE I, SECTION 10 AND 16, OHIO CONSTITUTION.

Supporting Facts: Trial counsel was ineffective by failing to object to the obstructing justice, jury instruction. Petitioner submits that, reasonably competent trial counsel could have recognized that the court's instruction omitted an essential element of the offense that he "had the specific intention of hindering discovery, apprehension, prosecution, conviction, or punishment of another person." Petitioner further submits that trial counsel's failure to object to the jury instruction prejudiced his defense because the prosecution did not present any evidence that he acted with requisite intention of protecting another person.

**GROUND FOUR**: PETITIONER'S CONVICTION FOR OBSTRUCTING JUSTICE WAS SUPPORTED BY INSUFFICIENT EVIDENCE IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW.

Supporting Facts: The evidence presented at trial was insufficient to find Petitioner guilty of obstructing justice. Nothing in the record shows that the state presented evidence that Petitioner had the required mindset to be found guilty.

**GROUND FIVE**: THE TRIAL COURT ERRED IN SENTENCING PETITIONER, WHEN IT DETERMINED THAT COUNT 5 (KIDNAPPING) AND COUNTS 6 AND 7 (OBSTRUCTING JUSTICE AND OBSTRUCTING OFFICIAL BUSINESS) WERE NOT ALLIED OFFENSES.

Supporting Facts: The trial court erred to the prejudice of Petitioner by determining that the kidnapping count did not merge with the obstructing justice and obstructing official business counts, when it found no evidence of separate harm.

**GROUND SIX**: THE TRIAL [COURT] ISSUED AN ERRONEOUS DECISION ON THE PETITIONER'S POST CONVICTION PETITION THAT IT WAS UNTIMELY AND FAILED TO PROPERLY ISSUE FINDINGS OF FACT AND CONCLUSIONS OF LAW.

Supporting Facts: Petitioner filed a timely post-conviction petition within the 365 days allowed after the transcripts are filed with the court of appeals. This is pursuant to statute §2953.21(A)(2)(a).

**GROUND SEVEN**: APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN BOTH OF HIS TRIAL ATTORNEYS FAILED TO OBJECT TO THE INTRODUCTION OF [S.W]'S INTERVIEW WITH LAW ENFORCEMENT ON APRIL 3, 2016 AND JUNE 9, 2016 INTERVIEWS WITH LAW ENFORCEMENT. SIXTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE I, SECTION 10 AND 16, OHIO CONSTITUTION.

Supporting Facts: Trial counsel was constitutionally ineffective in failing to object to the introduction of inadmissible statements that did not satisfy foundational requirements prior to the introduction of Sharleen's statements, the recorded statements were inadmissible.

**GROUND EIGHT**: APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN BOTH OF HIS TRIAL ATTORNEYS FAILED TO OBJECT TO THE INTRODUCTION OF EVIDENCE THAT WAS SUBSTANTIALLY MORE PREJUDICIAL THAN PROBATIVE.

Supporting Facts: Trial counsel was constitutionally ineffective in failing to object to the introduction of evidence that was substantially more prejudicial than it is probative. Trial Counsel failed to object to the following evidence; (1) mother [Sharleen Whaley] was limited to supervised visits with the alleged victim after she was placed in foster-care, (2) law enforcement speculated during an interview with Sharleen that Appellant would plead guilty and "be punished for what he done"; (3) law enforcement pushed the prosecutor to indict appellant; and (4) probate court orders that the victim was in danger while in appellant's presence. This evidence that "invited the jury to adopt factual conclusions about the evidence unfairly prejudiced his defense.

**GROUND NINE**: APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN BOTH OF HIS TRIAL ATTORNEYS FAILED TO OBJECT TO THE JURY INSTRUCTIONS GIVEN FOR COUNT 6, [O]BSTRUCTING JUSTICE. THE CONVICTION OF [O]BSTRUCTING JUSTICE, AND [O]BSTRUCTING OFFICIAL BUSINESS, AND KIDNAPPING, WAS SUPPORTED BY INSUFFICIENT EVIDENCE IN VIOLATION OF DUE PROCESS.

Supporting Facts: Trial counsel was ineffective by failing to object to the obstructing justice jury instruction. Petitioner submits that reasonably competent trial counsel could have recognized that the court's instruction omitted an essential element of the offense that he "had the specific intention of hindering discovery, apprehension, prosecution, conviction, or punishment of another person." Petitioner further submits that trial counsel failure to object to the jury instruction prejudiced his defense because the prosecution did not present any evidence that he acted with requisite intention of protecting another person.

**GROUND TEN**: TRIAL COURT ERRED IN SENTENCING APPELLANT WHEN IT DETERMINED THAT COUNT 5 KIDNAPPING AND COUNT 6 AND 7 [O]BSTRUCTING JUSTICE AND [O]BSTRUCTING OFFICIAL BUSINESS WERE NOT ALLIED OFFENSES.

Supporting Facts: The trial court erred to the prejudice of Petitioner by determining that the kidnapping count did not merge with the obstructing justice and obstructing official business counts, when it found no evidence of separate harm.

**GROUND ELEVEN**: THE CONVICTION OF [O]BSTRUCTING JUSTICE, AND [O]BSTRUCTING OFFICIAL BUSINESS, AND KIDNAPPING, WAS SUPPORTED BY INSUFFICIENT EVIDENCE IN VIOLATION OF DUE PROCESS.

Supporting Facts: The evidence presented at trial was insufficient to find Petitioner guilty of obstructing justice, and kidnapping. Nothing in the record shows that the state presented evidence that Petitioner had the required mens-rea to be found guilty.

**GROUND TWELVE**: TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO HAVE DNA COMPANY "DNA DIAGNOSTIC" PROCESS THE EVIDENCE AT ALL FOR AN INDEPENDENT ANALYSIS, AND TO PRODUCE ITS EXPERT FOR TRIAL, AFTER THE DEFENSE COUNSEL AND THE COURT STATED THE IMPORTANCE OF HAVING IT TO PREPARE AN APPROPRIATE DEFENSE.

Supporting Facts: At the Status Conference held on January 5, 2018 Tp.'s 20- 29 the Trial Attorney stated on T.p.'s 21 line 18- pg. 22 Lines 1 "Attorney Skaggs: It's my position that it is virtually impossible for me to effectively prepare Mr. Blackburn's defense without the assistance of the expert…further at T.p.'s Line 3 "it leaves me in an interesting Position as far as being able to prepare an appropriate defense to the DNA portion..um..of the case. Further the Court states that: T.p.'s 29 Lines 6-12. Judge: "I will say that I think that it would be foolish to proceed to trial without this….the aid of the expert testimony so I will…uh…review that motion extremely carefully because I think there is an obligation for Mr. Skaggs to provide a fair and adequate defense and I have to look at this and determine whether or not that can be done without the aid of the expert.

(ECF No. 1.)  On December 13, 2021, Respondent filed a Return of Writ, arguing that all of

Petitioner's claims are either procedurally defaulted or without merit.  (ECF No. 8.)  On April

13, 2022, Petitioner filed his Traverse.  (ECF No. 19.)

## III.  STANDARDS OF REVIEW

### A.  AEDPA

Because this is a habeas corpus case, provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104-132, 110 Stat. 1214, apply to this case.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA limits the circumstances under which a federal court may grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in a state court proceeding.  Specifically, under the AEDPA, a federal court shall not grant a writ unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).  Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors.  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015).  Additionally, this Court's habeas review is limited to the record that was before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170 (2011).

### B.  Procedural Default

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration.  28 U.S.C. § 2254(b), (c).  If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to

dismissal for failure to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)).  Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to properly present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal, before a federal court intervenes in the state criminal process.  This fair presentment requirement "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552-53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).  One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted.  That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court.  As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case – that is, they are "procedurally defaulted."  It is well settled that "[a] common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (citing the four-part *Maupin* standard). First, the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. Finally, if the court determines that a state procedural rule was not complied with and the rule has an adequate and independent state ground, then the petitioner may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138. In order to establish cause, a petitioner must show that "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner bears the burden of showing cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999)).

## IV. DISCUSSION

In his habeas petition, Petitioner sets forth twelve claims for relief, although the claims are somewhat repetitive. Petitioner argues that trial counsel was ineffective for failing to object to the introduction of witness interviews with law enforcement (claims one and seven), failing to object to other evidence that was unfairly prejudicial (claims two and eight), failing to object to

the jury instruction regarding count six, obstructing justice (claims three and nine), and failing to

obtain an independent DNA expert and analysis (claim twelve). Petitioner also alleges that his

convictions for obstruction of justice, obstructing official business and kidnapping were not

supported by sufficient evidence (claims four and eleven), and that the trial court erred in failing

to merge those convictions at sentencing (claims five and ten). Finally, Petitioner challenges the

trial court's finding that his postconviction petition was untimely, as well as the trial court's

failure to make findings of fact in post-conviction (claim six). (ECF No. 1.)

### A. Procedural Default

Before considering the merits of Petitioner's habeas claims, the Court must first

determine whether Petitioner has cleared certain procedural hurdles. Respondent argues that

Petitioner has not, and that claims three, four, six, nine, eleven and twelve are barred by

procedural default.

### 1. Grounds Three, Four, Nine and Eleven

Respondent argues that Petitioner procedurally defaulted his third and ninth grounds for

relief, which assert the ineffective assistance of counsel for failing to object to the jury

instructions pertaining to the obstruction of justice count, and his fourth and eleventh grounds for

relief, which allege there was insufficient evidence to support his convictions for obstruction of

justice, obstructing official business and kidnapping. Respondent contends that Petitioner

defaulted the claims because he failed to appeal the court of appeals' decision on these claims to

the Ohio Supreme Court. (ECF No. 8, at PAGEID # 409-412.) Alternatively, Respondent

argues the claims are moot, because the court of appeals granted relief on the claims.

Petitioner raised the allegations contained in his third, fourth, ninth and part of his

eleventh grounds for relief on his first direct appeal. Specifically, in his third assignment of

error, Petitioner argued that his trial attorneys failed to object to erroneous jury instructions regarding obstructing justice, and in his fourth assignment of error, Petitioner alleged his conviction for obstructing justice was not supported by sufficient evidence.  (ECF No. 7, at PAGEID # 76.)  The state court record reveals the Fourth District Court of Appeals agreed with Petitioner, opining that his trial counsel should have objected to the trial court's jury instruction on obstructing justice:

> {¶ 57} In his third assignment of error, appellant asserts that trial counsel performed ineffectively by failing to object to the obstructing-justice jury instruction. . . .

> {¶ 58} We recognize that the state candidly and forthrightly agrees with appellant's third assignment of error and requests that we vacate appellant's obstructing-justice conviction and remand for re-sentencing on the merged count–obstructing official business.

> * * *

> {¶ 61} In the case at bar, the trial court's jury instruction did not inform the jury that the offense requires the defendant's conduct to be for the benefit of another person.

> * * *

> Thus, because the court's instruction did not accurately state the elements of the charged offense, we agree with appellant that trial counsel should have objected to the instruction and that counsel's failure to do so prejudiced the outcome of the proceedings. Moreover, the state did not present any evidence to show that appellant engaged in conduct designed to prevent another from escaping detection or punishment.

> {¶ 62} Accordingly, based upon the foregoing reasons, we sustain appellant's third assignment of error and remand this matter for re-sentencing on the merged count.

> {¶ 63} In his fourth assignment of error, appellant asserts that the state did not present sufficient evidence to support his obstructing justice conviction. Because we believe that our disposition of appellant's third assignment of error renders his fourth assignment of error moot, we need not address it. See App.R. 12(A)(1)(c).

*State v. Blackburn*, No. 18CA3, 2020 WL 1479608, *9-10 (Oh. App. 4th Dist. Mar. 11, 2020).

17

The Court disagrees with Respondent that Petitioner's third, fourth, and part of his ninth and eleventh grounds for relief are defaulted because Petitioner failed to appeal the court of appeals decision. The court of appeals granted relief to Petitioner and vacated his conviction for obstructing justice. On remand, Petitioner was resentenced only on the remaining counts. Accordingly, there was nothing for Petitioner to appeal with respect to the vacated obstructing justice conviction. However, because Petitioner's conviction for obstructing justice was vacated based on the erroneous jury instructions and insufficient evidence, his current habeas claims challenging the vacated conviction are moot. As Petitioner is no longer in custody for that offense, this Court cannot review the vacated conviction in habeas corpus. The Undersigned **RECOMMENDS** that grounds three, four, and part of nine and eleven be **DENIED AS MOOT.**

The remainder of Petitioner's ninth ground for relief asserts that in addition to trial counsel's failure to object to the jury instructions on obstructing justice, counsel also failed to object to erroneous jury instructions pertaining to the obstructing official business and kidnapping counts. To the extent that Petitioner did not raise any claims of ineffective assistance of trial counsel for failing to object to the jury instructions on the kidnapping and obstructing official business counts, either on direct appeal or as a claim of ineffective assistance of appellate counsel in his Rule 26(B) application to reopen, the remaining portion of Petitioner's ninth ground for relief is procedurally defaulted. The state courts have never been presented with an opportunity to address this issue.

The remainder of Petitioner's eleventh ground for relief asserts that his convictions for kidnapping and obstructing official business were not supported by sufficient evidence. (ECF No. 1, at PAGEID # 12-14.) The Court notes that although Petitioner raised a similar challenge on direct appeal to his obstructing justice conviction, he never raised a sufficiency challenge to

his convictions for kidnapping or obstructing official business.  Because the state courts were not given an opportunity to address this issue, the remainder of Petitioner's eleventh ground for relief is procedurally defaulted.

It does appear, however, that Petitioner attempted to raise a claim of ineffective assistance of appellate counsel for failing to challenge the sufficiency of the evidence regarding the kidnapping and obstructing official business counts in his Rule 26(B) application to reopen his direct appeal.  (ECF No. 7, at PAGEID # 313-319.)  In his Rule 26(B) application, Petitioner set forth a single claim of ineffective assistance of appellate counsel and provided several pages of alleged infractions including an allegation that there was insufficient evidence to support his kidnapping and obstructing official business convictions.  (*Id*. at 315-16.)  The appellate court denied Petitioner's application to reopen, finding that no substantive issues existed.  (*Id*. at PAGEID # 322.)  With respect to his kidnapping and obstructing official business convictions, the appellate court determined:

> We additionally disagree with appellant that appellate counsel performed ineffectively by failing to assert that sufficient evidence does not support appellant's obstructing justice, obstructing official business, and kidnapping convictions.
> . . .
> Appellant's application does not contain any facts to support an argument that the state failed to present sufficient evidence to support the convictions. Instead, appellant claims that the testimony that he and S.W. took the victim on vacation is more credible.
> We point out, however, that the jury, as the trier of fact, is free to accept or to reject any and all of the evidence and to assess witness credibility.  Further, a conviction is not legally insufficient or against the manifest weight of the evidence "simply because the fact-finder opts to believe the state's witnesses."  "A fact-finder is free to believe all, part, or none of a witness's testimony."
> In the case sub judice, the jury heard and observed the witnesses and obviously found the testimony of the state's witnesses credible.  "It is not our job to second-guess the jury where there is evidence from which it could reach a guilty verdict; we must defer to the jury's credibility and weight determinations. Consequently, we do not believe that appellant has raised a colorable claim regarding appellate counsel's ineffectiveness.

(ECF No. 7, at PAGEID # 334-39.)

Importantly, Petitioner did not appeal the denial of his Rule 26(B) application to reopen to the Ohio Supreme Court.  In Ohio, claims of ineffective assistance of appellate counsel must be raised through an application to reopen the direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B).  *State v. Murnahan*, 63 Ohio St.3d 60 (1992).  The denial of a Rule 26(B) application must be appealed in order to "give the Ohio Supreme Court a full or fair opportunity to rule on it."  *Carter v. Mitchell*, 693 F.3d 555, 565 (6th Cir. 2012) (finding petitioner's failure to appeal initial denial of Rule 26(B) application forecloses habeas review).  Because Petitioner failed to file an appeal of the appellate court's denial of his application, he has procedurally defaulted any argument that the ineffective assistance of appellate counsel excuses the default of his underlying insufficient evidence claim.  *See Edwards v. Carpenter*, 529 U.S. 446 (2000) (an allegation of ineffective assistance of appellate counsel cannot serve as cause to excuse the default of an underlying claim if the appellate counsel ineffectiveness claim is also defaulted).

 In sum, the Undersigned **RECOMMENDS** that grounds three and four be **DENIED AS MOOT**, and grounds nine and eleven be **DENIED** as both **MOOT** and **PROCEDURALLY DEFAULTED**.

### 2. Grounds Six and Twelve

In his sixth ground for relief, Petitioner alleges the trial court erred in denying his petition for post-conviction relief as untimely.  (ECF No. 1, at PAGEID # 9.)  In his twelfth ground for relief, Petitioner alleges that his trial counsel was ineffective for failing to have the DNA evidence tested by an independent expert.  (*Id*. at PAGEID # 15.)  Petitioner contends he raised the basis for his twelfth ground for relief in the post-conviction petition that was dismissed as

untimely.  (*Id.* at PAGEID # 16.)  Respondent argues that both of these grounds for relief are procedurally defaulted, because Petitioner failed to appeal the denial of his petition for post-conviction relief to the state appellate court.  (ECF No. 8, at PAGEID # 412-413.)

"A common example of a procedural default is a failure to raise a claim in state court in a timely manner."  *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).  In this case, the state court record reflects that on September 30, 2019, Petitioner, proceeding *pro se*, filed a post-conviction petition seeking to vacate or set aside his convictions.  (ECF No. 7, at PAGEID # 252-272.)  In the petition, Petitioner raised a single claim of ineffective assistance of trial counsel.  As part of that claim, Petitioner alleged trial counsel lied about having the DNA evidence evaluated by a defense DNA or forensics expert.  (*Id*. at PAGEID # 253.)  On December 30, 2019, the trial court dismissed the petition as untimely, finding that Petitioner filed his petition "beyond the 180 time period set forth in R.C. § 2953.21(A)(2)" and "offered no explanation for his late filing." (*Id*. at PAGEID # 310.)  Petitioner did not appeal the trial court's decision.

In Ohio, a defendant may pursue claims that rely on evidence outside the trial record by seeking post-conviction relief pursuant to Ohio Revised Code § 2953.21.  *Stojetz v. Ishee*, 892 F.3d 175, 192 (6th Cir. 2018).  "But there's a catch," and "[a]t the time, Ohio required defendants to file their petitions for postconviction relief within 180 days" of the expiration of the time for appeal.  *Shank v. Marquis*, No. 21-3372, 2022 WL 2163789, at *2 (6th Cir. June 15, 2022).  Here, Petitioner attempted to raise a claim of ineffective assistance of trial counsel for the failure to challenge DNA evidence but missed the filing deadline.  The trial court enforced the procedural rule by dismissing the petition as untimely and declining to review Petitioner's claim on the merits.  Accordingly, the first and second elements of the *Maupin* test are satisfied with respect to Petitioner's twelfth ground for relief.  Moreover, "Ohio's timeliness requirements in

post-conviction proceedings constitute an independent and adequate state ground for declining to review the merits of a petitioner's claims." *Brown v. Clipper*, 5:14CV1406, 2016 WL 5173331, at *22–23 (N.D. Ohio Sept. 21, 2016).  Petitioner has not offered cause and prejudice to excuse the procedural default of his twelfth ground for relief.

In his sixth claim for relief, Petitioner argues that the trial court erred by dismissing his post-conviction petition as untimely and without making proper findings of fact and conclusions of law.  As an initial matter, Petitioner contends the trial court applied an outdated version of R.C. 2953.21(A) to dismiss the petition as untimely.  To the extent that this claim is not phrased as a claim asserting the violation of a federal constitutional right, it is not cognizable in habeas corpus.  Nevertheless, the claim is also procedurally defaulted.  It is well settled that a habeas petitioner must present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or appeal, before a federal court intervenes in the state criminal process.  This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review."  *Hicks v. Straub*, 377 F.3d 538, 552-53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).  In this case, Petitioner failed to appeal the trial court's dismissal of his post-conviction petition and he may no longer do so, as Ohio does not allow delayed appeals in post-conviction proceedings.  *See Brown v. Clipper*, No. 5:14-cv-1406, 2016 WL 5173331, at *23 (N.D. Ohio March 8, 2016); Ohio Appellate Rule 5(A).  For this reason, Petitioner's sixth claim for relief is defaulted because Petitioner did not appeal the trial court's decision dismissing his post-conviction petition to the state appellate court.  *Wilson v. Fender*, 20-4168, 2021 WL 3642334, at *3 (6th Cir. May 11, 2021) (reiterating that a habeas petitioner "must first exhaust his state remedies by 'giv[ing] the state courts one full opportunity to resolve any constitutional

issues by invoking one complete round of the State's established appellate review process.'")
(quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

Petitioner's failure to appeal the trial court's decision is also an additional basis for
finding Petitioner's twelfth claim for relief to be defaulted.  That is, Petitioner's twelfth ground
for relief is doubly defaulted – first, because Petitioner did not raise that ineffective assistance
claim in a timely post-conviction petition, and again because Petitioner did not appeal the trial
court's denial of the petition to the state appellate court.

Because Petitioner procedurally defaulted his sixth and twelfth grounds for relief and
because Petitioner makes no attempt to establish cause and prejudice to excuse his default, the
Undersigned **RECOMMENDS** that Petitioner's Sixth and Twelfth grounds for relief be
**DENIED**.

### B.  Merits review of remaining claims

#### 1.  Grounds One, Two, Seven and Eight

In his first and seventh claims for relief, Petitioner alleges that he was denied the
effective assistance of trial counsel, because his counsel failed to object to the introduction of
Sharleen Whaley's interviews with law enforcement.  In his second and eighth claims for relief,
Petitioner asserts that his trial counsel failed to object to the introduction of evidence that was
substantially more prejudicial than probative.  Specifically, trial counsel failed to object to
evidence that Sharleen Whaley was limited to supervised visits with the victim S.W. after S.W.
was placed in foster-care, that law enforcement speculated during an interview with Sharleen
Whaley that Petitioner would plead guilty and "be punished for what he done," that law
enforcement pushed the prosecutor to indict Petitioner, and a reference to probate court orders

that the victim was in danger while in Petitioner's presence.  According to Petitioner, this evidence invited the jury to adopt factual conclusions about the evidence and unfairly prejudiced his defense.  (ECF No. 19, at PAGEID # 1844-49.)

### a.  State court decision

Petitioner raised these claims on direct appeal to the Ohio Fourth District Court of Appeals.  After setting forth the appropriate standard for evaluating claims of ineffective assistance of trial counsel established in *Strickland v. Washington*, 466 U.S. 668 (1984), the state appellate court rejected Petitioner's claims, finding:

> {¶ 30} In his first assignment of error, appellant argues that trial counsel performed ineffectively by failing to object to the introduction of the mother's April 3, 2016 and June 9, 2016 interviews with law enforcement. In his second assignment of error, appellant asserts that trial counsel performed ineffectively by failing to object to evidence that was substantially more prejudicial than probative.
>
> ***
>
> {¶ 38} Appellant first asserts that trial counsel's failure to object to the introduction of the interview recordings constituted ineffective assistance of counsel. Appellant contends that counsel performed deficiently by failing to object to the interview recordings because the recordings were inadmissible under the rules of evidence. Appellant argues that the trial court would have sustained objections to the mother's interviews for one of the following three reasons: (1) the statements constituted inadmissible hearsay; (2) the state could not impeach the mother, its own witness, due to a lack of surprise; or (3) the state could not play the interviews before the jury in order to refresh the mother's recollection. Appellant further claims that counsel's alleged deficiency prejudiced his defense. Appellant contends that if counsel had objected to the introduction of the interviews, the trial court would have sustained the objection and the jury would not have heard evidence that the mother changed her story. Appellant suggests that if the jury had not heard evidence that the mother changed her story, the outcome of the trial would have been different.
>
> {¶ 39} We first point out that counsel's decision not to object may have been sound trial strategy. The record reflects that counsel actually considered raising an objection. Before the state introduced the recordings, the court asked appellant's trial counsel whether appellant intended to object to the playing of the interviews. Counsel replied, "I think for the record, I probably have to render an objection and

make one." Counsel further indicated that he wished to further consider the issue during the lunch break.

{¶ 40} When trial resumed after lunch, the prosecutor sought permission to play the mother's first interview. The trial court directly asked counsel whether appellant objected, and counsel responded, "No, your Honor." The record thus shows that trial counsel was well-aware of the potential to raise an objection but decided not to raise one. Consequently, the record demonstrates that counsel's decision was a calculated trial strategy.

{¶ 41} Assuming, arguendo, that trial counsel acted deficiently by failing to object and the trial court would have sustained an objection, the result of the proceeding would not have been different. Instead, the record contains overwhelming and powerful evidence of appellant's guilt. Even without the mother's two recorded interviews, one that implicated appellant and one a feeble attempt to exonerate him, several other witnesses testified that mother initially reported that appellant, completely naked, exited the victim's bedroom and mother found the victim in bed with a vibrator. The 911 dispatcher testified that the mother reported that she had a "child molester," appellant, in her home and that the mother stated that she "just caught [appellant] coming out of [her] daughter's room." Additionally, the two emergency responders testified that mother informed them that she saw appellant exit the victim's bedroom and appellant was completely naked. The emergency room nurse likewise testified that the mother reported that she saw appellant leaving the victim's room and that appellant was completely naked. Appellant did not argue that the trial court erred by admitting these other witnesses' statements.

{¶ 42} Moreover, the mother's shifting nature of her story and her desire to exonerate appellant gave the trial court pause, and the trial judge deemed it appropriate to summon counsel to a sidebar. During the discussion, the court noted the mother's incredulous statement that she did not recognize her own voice and advised the parties that the court would declare the mother a hostile witness for the state. Thus, because the mother's trial testimony also shows that she attempted to exonerate appellant, a successful objection to the second interview would not have changed the result of the proceedings.

{¶ 43} In sum, we find nothing in the record suggests that trial counsel failed to provide the effective assistance of counsel as the United States Constitution guarantees. Trial counsel presented a vigorous defense and raised objections that counsel deemed appropriate. Simply because counsel did not raise every objection appellant now wishes counsel had made does not mean that counsel provided ineffective assistance. The record does not reveal that counsel's failure to object to the interview recordings essentially defaulted the case to the state. Therefore, we do not agree with appellant that trial counsel failed to provide the effective assistance of counsel guaranteed under the state and federal constitutions.

{¶ 44} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

{¶ 45} Appellant next argues that trial counsel performed ineffectively by failing to object to evidence that appellant claims was more prejudicial than probative. In particular, appellant asserts that trial counsel should have objected to the following evidence that had little to no probative value: (1) mother was limited to supervised visits with the victim after the victim was placed in foster care; (2) law enforcement speculated during an interview with the mother that appellant would plead guilty and "be punished for what he's done"; (3) law enforcement pushed the prosecutor to indict appellant; and (4) probate court orders that the victim was in danger while in appellant's presence. Appellant claims that the foregoing evidence carried little probative value, and instead, the evidence unfairly prejudiced his defense. Appellant posits that the evidence "invited the jury to adopt the factual conclusions about trial evidence made by others who hold positions of government authority."

{¶ 46} Appellant contends that counsel's alleged deficient performance prejudiced his defense. Appellant claims that a successful objection would have resulted in the exclusion of the above mentioned evidence from the jury's consideration. Appellant posits that had the jury not heard that evidence, "the jury would have more closely scrutinized" the forensic evidence. Appellant thus asserts that a reasonable probability exists that the outcome of the trial would have been different.

{¶ 47} We again note that trial counsel need not object to all potentially objectional evidence. Experienced counsel understand "that each potentially objectionable event could actually act to their party's detriment." *Johnson* at ¶ 140. Thus, "any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state." *Id.*

{¶ 48} In the case at bar, we conclude that counsel's decision not to object to the evidence might have been a strategic decision. Counsel raised other objections throughout the trial and did not so consistently fail to object to evidence that clearly was inadmissible such that the case, in essence, defaulted to the state. We thus question whether counsel's failure to object constitutes deficient performance.

{¶ 49} Assuming, arguendo, that counsel's failure to object constitutes deficient performance, we do not believe that the alleged deficiency prejudiced appellant's defense.

***

{¶ 53} All relevant evidence may be prejudicial in the sense that it "tends to disprove a party's rendition of the facts" and thus, "necessarily harms that party's case." *Crotts* at ¶ 23. Evid.R. 403(A) does not, however, "attempt to bar all prejudicial evidence." *Id.* Instead, the rules provide that only unfairly prejudicial

evidence is excludable. *Id.* " 'Evid.R. 403(A) speaks in terms of unfair prejudice. Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant. It is only the latter that Evid.R. 403 prohibits.' " *State v. Skatzes*, 104 Ohio St.3d 195, 2004–Ohio–6391, 819 N.E.2d 215, ¶ 107, quoting *State v. Wright*, 48 Ohio St.3d 5, 8, 548 N.E.2d 923 (1990). "'Unfair prejudice' does "not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." ' " *State v. Lang*, 129 Ohio St.3d 512, 2011–Ohio–4215, 954 N.E.2d 596, ¶ 89, quoting *United States v. Bonds*, 12 F.3d 540 (6th Cir.1993). Unfairly prejudicial evidence is evidence that "might result in an improper basis for a jury decision." *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172, 743 N.E.2d 890 (2001), quoting Weissenberger's Ohio Evidence (2000) 85–87, Section 403.3. It is evidence that arouses the jury's emotions, that " 'evokes a sense of horror,' " or that " 'appeals to an instinct to punish.' " *Id.* " 'Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect.' " *Id.* Thus, "[u]nfavorable evidence is not equivalent to unfairly prejudicial evidence." *State v. Bowman*, 144 Ohio App.3d 179, 185, 759 N.E.2d 856 (12th Dist.2001).

{¶ 54} In the case at bar, even if we concluded that counsel performed deficiently by failing to object, we cannot conclude that counsel's alleged deficiency prejudiced his defense. First, it is far from clear that the trial court would have sustained an Evid.R. 403(A) objection that the evidence is unfairly prejudicial. Certainly, the evidence was unfavorable. The evidence also portrayed the victim as sympathetic and helpless. But we cannot state that any of the evidence was so unfairly prejudicial that the trial court would have abused its discretion by failing to sustain an objection to the evidence.

{¶ 55} Moreover, even if the court had sustained the objections, appellant has failed to show a reasonable probability exists that the outcome of his trial would have been different. As we explained in our discussion of appellant's first assignment of error, overwhelming evidence supports appellant's convictions. We do not see any danger that the evidence appellant believes counsel should have objected to so infected the jury's decision-making process that the verdicts are unreliable.

{¶ 56} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

*State v. Blackburn*, No. 18CA3, 2020 WL 1479608, *4-9 (Oh. App. 4th Dist. Mar. 11, 2020).

## b. AEDPA review

The AEDPA, coupled with the United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), provides the proper framework for assessing Petitioner's

claims of ineffective assistance of trial counsel.  To establish "that counsel's assistance was so defective as to require reversal of a conviction," a petitioner must show (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.  Prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694, and a reasonable probability is a "substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotation marks omitted).  This standard is "highly demanding," *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986), and when, as here, an ineffective assistance of counsel claim is subject to the AEDPA's constraints because a state court has decided the claim on the merits, a habeas court's review is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  That is, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether it was unreasonable – a substantially higher threshold.'" *Id*. at 122 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  Petitioner must show that the state court's decision is so obviously wrong that its error lies "beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  Congress "meant" this standard to be "difficult to meet." *Id*. at 102.  And Petitioner has not satisfied that standard here.

In the Traverse, Petitioner argues that trial counsel's failure to object to the introduction of Sharleen Whaley's prior statements was deficient performance, because the statements amounted to hearsay, and he suffered prejudice because the out of court statements provided greater detail than the 911 calls and her trial testimony.  (ECF No. 19, at PAGEID # 1830-1834.) With respect to the failure to object to other prejudicial and inflammatory evidence, Petitioner argues "[t]he evidence that S.W. was in foster case, that guardianship orders were necessary, and

that law enforcement believed Shawn to be guilty all invited the jury to adopt the factual

conclusions about trial evidence made by others who hold positions of government authority."

(*Id.* at PAGEID # 1844.)

What Petitioner does not argue, however, is how the state court's rejection of his

ineffective assistance claims "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law," or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28

U.S.C. § 2254(d).  The interplay of AEDPA standards and *Strickland* requires this Court to give

"both the state court and the defense attorney the benefit of the doubt."  *Burt v. Titlow*, 571 U.S.

12, 15 (2013).

With respect to the deficient performance prong of the *Strickland* standard, it was not

unreasonable for the state court to conclude that Petitioner's trial counsel did not fail,

consistently, to object to evidence that was clearly inadmissible, given – as the state court noted

– that trial counsel raised other objections throughout the trial.  As to the prior statements of

Sharleen Whaley that are at issue in Petitioner's first and seventh claims for relief, the state court

noted that trial counsel considered whether to lodge an objection and ultimately decided not to

object.  The trial transcript reveals the following exchange occurred during Sharleen Whaley's

direct trial testimony, prior to the State's introduction of her prior statements:

> JUDGE REGAN: Ok, because I'm assuming at this stage, you are going to play her
> interviews?
>
> SPECIAL PROSECUTOR CANEPA: Yep.
>
> JUDGE REGAN: I might as well ask now, is there going to be an objection to the
> playing of the interviews? To help frame the question, there are some things she
> has already said, I didn't. .. either I didn't say that or I don't remember.
>
> ATTORNEY MEADOWS: I know.

> JUDGE REGAN: And she's already conceded her memory was better at the time of the interviews.
>
> ATTORNEY MEADOWS: I think for the record, I probably have [to] render an objection and make one.
>
> JUDGE REGAN: Ok, do you want to tell me what that might be or do you want to think about it over the lunch break?
>
> ATTORNEY MEADOWS: I want to look at it over the lunch break.
>
> JUDGE REGAN: Because It's not self-evident to me what the objection would be, so ...
>
> ATTORNEY SKAGGS: I don't think it's self-evident to us right now either.

(ECF No. 9, at PAGEID # 994-95.)  Following the lunch break, the following exchange occurred:

> JUDGE REGAN: It's ok. Please be seated. Alright, we're back after the lunch break. We're resuming with our witness. Ma'am, you are still under oath.
>
> SPECIAL PROSECUTOR CANEPA: Your Honor, at this time I would request permission to play one of the interviews for the witness. The interview that she had with the deputies at the Sheriff's Office on April 3rd of 2016.
>
> JUDGE REGAN: Objection?
>
> ATTORNEY MEADOWS: No, your Honor.

(*Id*. at PAGEID # 1001.)  This exchange demonstrates that counsel's decision not to object was an intentional strategic decision made after careful consideration.  Counsel stated on the record that he was not necessarily aware of an appropriate objection, asked for time to consider the issue over a court break, then decided not to object.

With respect to the prejudice component, the state court determined that even if counsel performed deficiently by failing to object to the introduction of Sharleen Whaley's prior statements, the result of the trial would not have been different, because the record contained

overwhelming evidence of Petitioner's guilt. Even if the contents of the two recorded interviews had not been introduced, several other witnesses testified that Sharleen Whaley reported that Petitioner "completely naked, exited the victim's bedroom and mother found the victim in bed with a vibrator." *Blackburn*, 2020 WL 1479608, *7. Importantly, Petitioner failed to argue the trial court erred in admitting those statements. This same evidence is also fatal to Petitioner's argument that counsel should have objected to the introduction of other unfavorable evidence including a reference to probate court orders, that Sharleen Whaley was limited to supervised visits with S.W., and that law enforcement pushed the prosecutor to indict Petitioner and speculated Petitioner would plead guilty. Because of the other evidence of Petitioner's guilt to which he did not object, Petitioner cannot show a reasonable probability exists that the outcome of his trial would have been different. It is apparent the court of appeals "understood the facts of [Petitioner's] case and reasonably concluded that he had not met *Strickland*'s prejudice prong [and] [t]his is all that is required to satisfy AEDPA deference on this issue." *Miles v. Jordan*, 988 F.3d 916, 930 (6th Cir. 2021). Petitioner's first, second, seventh and eighth grounds for relief lack merit and the Undersigned **RECOMMENDS** that the claims be **DENIED** on this basis.

Although Petitioner's seventh and eighth grounds for relief are set forth in the Petition as claims of ineffective assistance of trial counsel, there is at least some indication that Petitioner's intent was to assert those allegations as claims of ineffective assistance of appellate counsel, with the factual basis of the claims mirroring the ineffective assistance of trial counsel claims asserted in his first and second grounds for relief. To the extent Petitioner has attempted to set forth claims of ineffective assistance of appellate counsel, those claims would be defaulted for the reasons previously discussed – namely, that Petitioner failed to appeal the denial of his Rule

31

26(B) application to the Ohio Supreme Court.  The claims would also lack merit, because appellate counsel did actually raise these issues on direct appeal as Petitioner's first and second assignments of error, and the claims were rejected by the Fourth District Court of Appeals on the merits.  *Blackburn*, 2020 WL 1479608 at \*4-9.

### 2.  Fifth and Tenth Grounds for Relief

In his Fifth and Tenth Grounds for Relief, Petitioner argues the trial court erred by finding the kidnapping charge in count five and the obstructing official business charge in count seven were not allied offenses and therefore did not merge for sentencing.  To the extent that Petitioner also alleges the trial court erred by failing to merge the kidnapping charge with the vacated conviction for obstructing justice, (ECF No. 1, at PAGEID # 8, 13), that argument is **MOOT**.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution affords a defendant three basic protections: "It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  *Brown v. Ohio* 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).  The Double Jeopardy Clause was held applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).  Relevant to this case, "'[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Jackson v. Smith*, 745 F.3d 206, 211 (6th Cir. 2014) (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)).

In Ohio, courts apply R.C. 2941.25, the allied offenses statute, to ascertain Ohio's legislative intent. *Jackson*, 745 F.3d at 212. The Sixth Circuit has held that an Ohio court of appeals' analysis of a double jeopardy claim that is limited to the application of R.C. 2941.25 is "entirely dispositive of the federal double jeopardy claim." *Id*. at 210. That is, "[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's interpretation of that state's own statutes." *Volpe v. Trim*, 708 F.3d 688, 697 (6th Cir. 2013). *See also Jackson*, 745 F.3d at 211 ("What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment."); *Scott v. Turner*, No. 20-4028, 2021 WL 1327145, *2 (6th Cir. Feb. 4, 2021) (noting the state court's R.C. 2941.25 determination on merger of allied offenses "is conclusive" on habeas review).

After the Fourth District Court of Appeals vacated Petitioner's conviction for obstructing justice, the trial court resentenced Petitioner, and determined, once again, that the kidnapping offense did not merge with the obstructing official business count. On his direct appeal following resentencing, Petitioner argued that the trial court erred by failing to merge the two counts. In overruling Petitioner's single assignment of error, the court of appeals looked to Ohio Revised Code Section 2941.25 to determine that the kidnapping and obstructing official business offenses were subject to separate penalties because the offenses involved separate victims:

> {¶15} Blackburn maintains that the kidnapping and obstructing official business offenses must merge because "[t]he crimes are similar and did not cause separate harm, the offenses were not committed separately, and they were not committed with separate animus or motivation." He asserts that R.C. 2905.01(A)(5) and R.C. 2921.31(A) are "similar and, in some places use[ ] identical language." He asserts that both statutes "require [him] to do something that would hamper or impede the investigation of law enforcement into the abuse allegations." He claims both offenses arose from and were completed with the "singular action" of removing the daughter from her home to prevent the mental capacity evaluation from being completed.

{¶16} Blackburn has failed in his burden to show that the trial court should have merged the kidnapping and obstructing official business offenses. The offenses involve separate victims. With regard to the kidnapping offense, the daughter is the victim. She is the individual whom Blackburn removed from her home with purpose to hinder, impede, or obstruct a function of government. Blackburn did not have to succeed in that purpose to commit the offense. With regard to the obstructing official business offense, the victim is the public. Obstructing official business falls under R.C. Chapter 2921, which "criminalizes offenses committed against justice and public administration." *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, 3 N.E.3d 135, ¶ 18. "R.C. Chapter 2921 was separately enacted within Ohio's criminal code to focus on the special societal ills created by improper interference in the administration of justice or the discharge of a public duty." Id. Although Blackburn's obstructing official business offense was a fifth-degree felony because the jury found that he created a risk of physical harm to the daughter, see R.C. 2921.31(B), the public suffered actual harm because Blackburn hampered or impeded a public official in the performance of the public official's lawful duties. Because the offenses involve separate victims, they are offenses of dissimilar import and not subject to merger, and it is unnecessary for us to also consider whether the offenses were committed separately or with separate animus. Accordingly, we overrule the sole assignment of error and affirm the trial court's judgment.

*State v. Blackburn*, No. 20CA8, 2021 WL 5296899, *3 (Oh. App. 4th Dist. Nov. 11, 2021).

This Court is bound by that determination. *See Volpe*, 708 F.3d at 697. *See also Delgadillo-Benuelos v. Warden*, No. 2:20cv4996, 2021 WL 2291316, *10 (S.D. Oh. June 4, 2021) (habeas court is bound by state court determination that "the charges at issue involve two separate offenses subject to separate penalties under Ohio law in view of the discovery of drugs by police in separate locations at different times").

Because the Ohio court of appeals' analysis of Petitioner's double jeopardy claim is "entirely dispositive of the federal double jeopardy claim," *Jackson*, 745 F.3d at 210, the Undersigned **RECOMMENDS** that Petitioner's Fifth and Tenth Grounds for relief be **DENIED**.

## V.  CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** the following:  (1) Petitioner's third and fourth grounds for relief be **DENIED AS MOOT**; (2) Petitioner's ninth and eleventh grounds for relief be **DENIED AS MOOT IN PART** and **PROCEDURALLY DEFAULTED IN PART** (3) Petitioner's sixth and twelfth grounds for relief be **DENIED AS PROCEDURALLY DEFAULTED**; and (4) Petitioner's first, second, fifth, seventh, eighth and tenth grounds for relief be **DENIED** because those claims lack merit.  In sum, the Undersigned **RECOMMENDS** that the Petition be **DISMISSED with prejudice.**

Further, Petitioner should not be granted a certificate of appealability, as reasonable jurists would not debate whether all of Petitioner's grounds for relief are procedurally defaulted, without merit, or moot.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020).  The Court should certify to the Sixth Circuit that any appeal would be objectively frivolous, and therefore Petitioner should not be permitted to proceed in forma pauperis on appeal.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

*s/ Elizabeth A.  Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE
